J-A02019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| In Re: Adoption of: L.T.D., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appeal of: C.D., Father | No. 1553 MDA 2015 |

Appeal from the Decree August 10, 2015
in the Court of Common Pleas of Northumberland  County
Orphans' Court Division, at No(s): 4 of 2015

| | |
|---|---|
| In Re: Adoption of: J.S.D., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appeal of: C.D., Father | No. 1555 MDA 2015 |

Appeal from the Decree August 10, 2015
in the Court of Common Pleas of Northumberland  County
Orphans' Court Division, at No(s): 5 of 2015

BEFORE:  PANELLA, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 25, 2016**

C.D. ("Father") appeals from the Decrees entered on August 10, 2015, in the Court of Common Pleas of Northumberland County, which involuntarily terminated his parental rights to his minor son, J.S.D., born in December 2012, and to his minor daughter, L.T.D., born in November 2013 ("Children"). We affirm.

The trial court summarized the relevant facts and procedural history as follows. Prior the initial placement of either child, Father had an extensive history with Children & Youth services ("CYS") dating from 2010 and culminating in the involuntary termination of his parental rights of two older children on August 16, 2012.

J.S.D. was initially placed into foster care on December 20, 2012, following a referral from the medical staff on the day he was born and issuance of a verbal order by the court. At the time, the parents' home was deemed inappropriate. J.S.D. was adjudicated dependent on March 18, 2013. A finding of aggravated circumstances was also made with respect to both parents due to the prior involuntary terminations of parental rights. Following reports of initial progress, J.S.D. was returned to the physical custody of his parents on May 8, 2014, with CYS retaining legal custody.

L.T.D. was born in November 2013, and was not placed into foster care, due to the progress on the part of the parents. However, the situation quickly deteriorated, and seven weeks after the physical custody of J.S.D. was returned to the parents, foster placement of both Children was necessary.

The CYS caseworker observed bruising on J.S.D.'s body within a week after he was returned to the parents' physical custody. The parents claimed that J.S.D. was pinching himself, but several of the bruises were in locations inconsistent with self-inflicted injury. Shortly thereafter, CYS received a General Protective Services ("GPS") referral. Investigation of the referral revealed that J.S.D. was covered with bruises on both his face and his body.

Based on the parents' inability to assure the safety of the Children in the home, the Children were placed in foster care on July 3, 2014. L.T.D. was adjudicated dependent on September 17, 2014, and an order finding aggravated circumstances as to both parents was entered on September 18, 2014. Both Children have remained in the physical and legal custody of CYS from July 3, 2014 until the present.

On September 17, 2014, the parents were ordered by the court to: obtain and maintain appropriate housing; obtain and maintain financial stability; attend anger management, behavioral health services, resource work, and family center classes (parenting classes); and submit to drug testing. In addition, the parents were given periods of supervised visitation weekly.

CYS filed a petition for involuntary termination of parental rights of Father for both Children on February 2, 2015. The trial court held hearings on April 29, 2015, May 5, 2015, and August 5, 2015. Following the hearings, on August 10, 2015, the trial court entered decrees granting CYS's Petition for the involuntary termination of Father's parental rights.

Father timely appealed. This Court, *sua sponte*, consolidated the appeals.

Father raises the following issue on appeal:

> Is the decision of the Orphans' Court to terminate Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), 23 Pa.C.S.A. § 2511(a)(2), 23 Pa.C.S.A. § 2511(a)(5), and 23 Pa.C.S.A. § 2511(b) supported by competent credible evidence, in the best interests of the children or justified by necessity?

Father's Brief at 4.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial

- 4 -

judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (citation omitted).

This court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Father's parental rights under, among other subsections, section 2511(a)(1) and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

- 5 -

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows.

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child *or* a refusal or failure to perform parental duties.

* * *

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties, as the word *or* joins the two portions of the statute. *See In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998).

Further, regarding the definition of "parental duties," this Court has stated as follows.

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

After a review of the certified record and the briefs of the parties, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to the Children, and affirm the decrees of the trial court based on the concise and well-written opinion by the Honorable Anthony J. Rosini.

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2016

- 8 -

| | |
|---|---|
| IN RE:<br>L.T.D.,<br>    A minor child<br><br>IN RE:<br>J.S.D.,<br>    A minor child | In The Court Of Common Pleas<br>Northumberland County, Pa<br><br>Orphan's Court Division<br><br>Adoptee No. 4 of 2015<br><br>Adoptee No. 5 of 2015<br><br>Children's Fast Track Appeal |

## OPINION

### Factual & Procedural Background

Appellants T.D. (Natural Mother) and C.D. (Natural Father) have appealed this Court's orders of August 10, 2015, terminating their parental rights. The order in question followed hearings conducted on April 29, 2015, May 5, 2015, and August 5, 2015 on Children & Youth Services (The Agency)'s Petition for Involuntary Termination of Parental Rights filed February 2, 2015 in the matters of L.T.D. and J.S.D. (Minor Children), after which the Court entered decrees terminating the parental rights of Natural Parents with respect to both Minor Children.

Prior to the initial placement of either child, the parties had an extensive history with The Agency dating from 2010 and culminating in the involuntary termination of their parental rights to two older children on August 16, 2012.

Minor child J.S.D. was initially placed into foster care on December 20, 2012, following a referral from medical staff on the day he was born and issuance of a verbal order from the Court. At that time, the Natural Parents' home was inappropriate, due to crowded conditions and the presence of some individuals who could not pass clearances. **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015, at 87-90, 111.** Additionally, there were concerns about the ability of the Natural Parents to provide adequate care for this minor child. **Id.**, at 91. J.S.D. was adjudicated dependent on March 18, 2013, at which time a finding of aggravated circumstances was made with respect to both parents due to the prior involuntary terminations of parental rights. Following encouraging reports of initial progress, the minor child J.S.D. was returned to the physical custody of the Natural Parents on May 8, 2014, with The Agency retaining legal custody.

Minor child L.T.D. was born in November of 2013 and was not placed at that time, due to the aforementioned progress on the part of the Natural Parents. However, the situation quickly deteriorated, and seven weeks after physical custody of J.S.D. was returned to the Natural Parents, foster placement of both minor children was necessary.

1

The Agency's caseworker observed bruising on J.S.D. within about a week after he was returned to the Natural Parents' physical custody. The Natural Parents claimed that the child was pinching himself, however several of the bruises were in locations inconsistent with self-inflicted injury. **Id.**, at 126. Shortly thereafter, The Agency received a General Protective Services (GPS) referral. Investigation of this referral revealed that J.S.D. was covered in bruises on both his face and body.

Based upon the inability of the Natural Parents to assure either child's safety in the home, the children were both placed in foster care on July 3, 2014. **Id.**, at 127. L.T.D. was adjudicated dependent on September 17, 2014, and an order finding aggravated circumstances as to both parents was entered on September 18, 2014. Both minor children have remained in the physical and legal custody of The Agency from July 3, 2014 until the present.

The Natural Parents were court-ordered, as of September 17, 2014, to: obtain and maintain appropriate housing; obtain and maintain financial stability; attend anger management, behavioral health services, resource work, and family center classes (parenting classes); and submit to drug testing. Additionally, the Natural Parents were given periods of supervised visitation weekly.[1]

The Agency filed Petitions for Involuntary Termination of Parental Rights for both minor children on February 2, 2015.

## Issues Presented

Natural Parents set forth the following in their Concise Statements of Matters Complained of on Appeal, all filed September 9, 2015:

1) The Court's decision to terminate parental rights was not supported by the evidence.

2) The Court committed an error of law in determining that the best interest of the Minor Children would be served by terminating the Natural Parents' parental rights.

## Standard & Scope of Review

The Pennsylvania Supreme Court has set forth its scope and standard of review as follows:

---

[1] The Dependency files DP-80-2012 and DP-59-2014 concerning the minor children were incorporated into the record by stipulation of counsel during the hearing on April 29, 2015. *See* **Transcript of Proceedings, Hearing on Termination of Parental Rights**, April 29, 2015, at 8.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re. Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817 (Pa. 2012), citing *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010).

## Legal Reasoning

### 1) The Agency Presented Clear And Convincing Evidence Of The Existence Of Grounds For Involuntary Termination

Pursuant to statutory authority governing the involuntary termination of parental rights:

> ...[the] rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent...
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child...**23 Pa.C.S.A.§2511(a)**.

3

The Appellate Court "need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights." *In re. B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004).

Here, The Agency established by clear and convincing evidence grounds for the termination of Natural Parents' parental rights to the minor children as to three of the subsections of the statute set forth in its petition, namely subsections (a)(1), (a)(2), and (a)(5)[2] of 23 Pa.C.S.§2511(a).

Subsection (a)(1) addresses the conduct of the parents and requires the court to find either a settled purpose of relinquishment of parental claim to the children or a refusal or failure to perform parental duties in the six months immediately preceding the filing of the petition.

The Petition for Termination of Parental Rights was filed on February 2, 2015. A review of the Permanency Review orders entered during the six months immediately preceding this date reveals that Natural Parents have failed to perform parental duties, as they have failed to complete some ordered services and have failed to transfer the lessons learned in other services to their parenting of the Minor Children.

Both parents were ordered to maintain financial stability. Natural Father receives SSI and also collects scrap metal. **Transcript of Proceedings, Involuntary Termination of Parental Rights, August 5, 2015,** at 27. Mother is not employed, but does receive SSI due to an intellectual disability. **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015,** at 120-121, **Transcript of Proceedings, Involuntary Termination of Parental Rights, August 5, 2015,** at 66. Although the parties did obtain stable housing in September of 2013 (see **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015,** at 111), the relationship between them has been unstable and fraught with conflict due to Natural Father's infidelity, resulting in a disruptive environment. **Id.,** at 41, 116. The parents do not have independent transportation, and Natural Father rides his bicycle as a means of transportation. **Id.,** at 120, **Transcript of Proceedings, Involuntary Termination of Parental Rights, August 5, 2015,** at 27. Both parents have completed several parenting courses, some more than once, and they have half-heartedly participated with the two resource workers assigned to them.

The parents have regularly attended visitation, however they have not been able to demonstrate a transfer of skills from their class and resource work within the context of that visitation, and since the second placement of J.S.D. and the initial placement of L.T.D., the visitation has not progressed to a point where supervision could be lifted. The parents follow a rather rote schedule during visitation from which they rarely deviate, and both have trouble consistently engaging the Minor Children. **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015,** at 92-93.

---

[2] The Court did not grant the portion of the Agency's Petition concerning subsection (8) of 23 Pa.C.S.A.§2511(a).

4

The progress seen prior to placement gave way to regression in the demonstration of parenting skills during visits despite suggestions being provided by both a caseworker and a resource worker for ways to improve the interaction (Id., at 130, 142), and The Agency was unable to transition the Natural Parents to unsupervised visits. It often took both parents to diaper L.T.D. Id., at 143. The parents have participated, to the extent that the childrens' ages allow, in telephone contact with the minor children, but have never sent any cards or gifts for birthdays or holidays. Id., at 140.

Father was ordered to participate in anger management classes, was unsuccessfully discharged from the same, and did not follow up or attempt to complete this court-ordered service until well after the termination petition had been filed. Id., at 110, **Transcript of Proceedings, Involuntary Termination of Parental Rights, August 5, 2015**, at 5-6, 11, 19. He has continued to exhibit outbursts of anger throughout the life of the case, most notably in the courthouse on May 8, 2014 and during a supervised visit on March 11, 2015. **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015**, at 205-206.

More recently, Father has also failed several drug tests, testing positive for spice. Id., at 145, 147, 212-213.

Subsection (a)(2) shifts the focus to the needs of the minor children and requires the court to find that the parental care, control or subsistence critical to the child's physical or mental well-being has been compromised by repeated incapacity, neglect, abuse, or refusal on the part of the parents.

As noted above, the Natural Parents have completed several parenting classes and have participated somewhat in resource work, but have had difficulty transferring the information to their visits with the Minor Children. **Transcript of Proceedings, Involuntary Termination of Parental Rights, May 5, 2015**, at 29, 197, 220, 230; **Transcript of Proceedings, Permanency Review Hearing, May 21, 2015**, at 5, 7, 10, 13. The Natural Parents have consistently missed and/or misinterpreted verbal and nonverbal cues from the Minor Children. **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015**, at 168-170, 190; *see also* **Transcript of Proceedings, Involuntary Termination of Parental Rights, May 5, 2015**, at 191, 201-202, 203.

The extensive bruising on J.S.D.'s face and body led to concerns that parental frustration may have given rise to inappropriate responses on the part of one or both Natural Parents. Although there was ultimately no founded report of physical abuse, the bruising remains unexplained. Despite the Natural Parents' claims that the minor child injured himself, there has been no additional injury since J.S.D.'s placement into foster care. **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015**, at 189. Additionally, the Natural Parents failed to attend a behavioral evaluation for J.S.D., despite the appointment having been made at their insistence and

despite having been provided transportation (the parents did not answer the door when the worker tasked with transporting them arrived to do so).[3] **Id.**, at 196.

Father's continued outbursts of anger are also of great concern. He threatened Agency personnel during one notable incident that occurred during a supervised visit, after a resource worker attempted to redirect him in interpreting cues from one of the Minor Children. **Transcript of Proceedings, Involuntary Termination of Parental Rights, May 5, 2015,** at 5-11. Natural Father's recent claims that he has seen the light, so to speak, and his recent attempts at participating in anger management (after the filing of the Termination Petition), as well as the testimony of Natural Father's character witnesses regarding the changes they have observed in Father's behavior (see **Id.**, at 48, 54, 93, 241 and **Transcript of Proceedings, Involuntary Termination of Parental Rights, August 5, 2015,** at 5, 11.) are belied by his actions, which are indicative of his inability to control his temper.

Natural parents have been assigned two resource workers, and have commented that neither resource worker was of any help to them. **Id.**, at 37, 38, 42, 47-51. This is because the Natural Parents have consistently refused or ignored the suggestions and advice of these workers. **Transcript of Proceedings, Involuntary Termination of Parental Rights, May 5, 2015,** at 15, 21, 29, 161-166.

In fact, Natural Parents have consistently blamed their circumstances on everyone but themselves, and have refused to recognize their own roles in the situation as it exists today. Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015, at 40, 42, **Transcript of Proceedings, Involuntary Termination of Parental Rights, August 5, 2015,** at 37, 38, 42. As Dr. Shienvold aptly observed, "Until you are willing to take responsibility for your issues, you can't improve them." **Transcript of Proceedings, Involuntary Termination of Parental Rights, April 29, 2015,** at 75.

Where parents do not exercise reasonable firmness in "declining to yield to obstacles" parental rights may be forfeited. *In re A.L.D.* 797 A.2d 326, 2002 Pa. Super. 104 (Pa. Super. 2002). Parents are expected to be steadfast in overcoming obstacles to maintaining the parent-child relationship. *In re Burns*, 379 A.2d 535, 474 Pa. 615 (Pa. 1977). Moreover, Natural Parents have had ample time prior to the termination to alleviate the conditions which originally necessitated placement. They simply failed to do so, and that failure was not a result of factors beyond their control. Natural Parents have demonstrated that they are unable to provide parental care, control, and subsistence critical to the Minor Childrens' physical and mental well-being due to repeated incapacity, abuse, and refusal of Natural Parents.

A finding under subsection (a)(5) requires that the child be removed from the care and control of the parent, either by the court or pursuant to a voluntary agreement, for a period of at least six months. Additionally, the conditions leading to such removal must continue to exist, it must be found that even given a reasonable amount of time the parent

---

[3] The behavioral evaluation yielded no concerns requiring follow up care.

6

would be unable to remedy these conditions, services available are not likely to remedy the conditions, and that termination would best serve the needs and welfare of the minor child.

More than six months had elapsed prior to the filing of the Petition for Termination of Parental Rights. The Minor Children were removed from the care and control of the parents pursuant to a verbal order on July 3, 2014. The termination petition was filed on February 2, 2015.

The conditions leading to removal continue to exist, in that Natural Parents' relationship remains unstable, their economic situation remains unchanged, and they are unable to demonstrate, when provided with the opportunity, their ability to provide for the needs and safety of the Minor Children. Furthermore, Natural Father's drug and anger issues remain unresolved. Although Natural Parents have made some recent attempts to address these issues, they did not do so until forced by circumstance of the filing of the Termination Petition, as outlined above.

Natural Parents do not possess the ability to remedy the conditions that led to placement within a reasonable amount of time, as evidenced by their inability to transfer skills taught in parenting classes and by resource workers and apply them to the parenting of their minor children. Natural Parents have not progressed beyond supervised visitation because they cannot demonstrate that they can provide for the needs and safety of the Minor Children when not supervised by Agency personnel.

Ultimately, the Natural Parents are utterly incapable of providing for the needs and safety of the Minor Children due to their lack of insight, their refusal to accept and/or meaningfully participate in services, and their insistence that this situation is everyone's fault but their own. The safety of the Minor Children simply could not be ensured if they were placed in the care of Natural Parents, and there is no indication that this state of affairs could change within a reasonable period of time.

Further, termination here most certainly would best serve the needs and welfare of the Minor Children. These Minor Children need permanency. As detailed above, that permanency has not been provided by Natural Parents for some time, and they are unable to currently provide it. The Minor Children have adjusted well to their foster placement, a placement which provides not only basic needs such as safety, food and shelter but also crucial higher level needs, such as emotional and learning support. The minor children have settled in as though they were already members of the family, and they feel safe and secure in this placement. **Transcript of Proceedings, Involuntary Termination of Parental Rights, May 5, 2015,** at 118, 120-121, 131. Marked differences are plainly observable in their behavior during their supervised visits with Natural Mother versus their behavior in the placement setting. **Id.,** at 212. These differences strongly suggest that the needs and welfare of the Minor Children would be best served by termination of Natural Parents' parental rights.

7

For these reasons, it is clear that the Court did not err in finding that The Agency established by clear and convincing evidence that termination was warranted pursuant to at least one of the grounds set forth in its petition. Again, the Appellate Court "need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights." *In re. B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004).

As noted by our Supreme Court, a decision to terminate parental rights is never made lightly, nor without some sense of compassion for the parent, especially where it is based upon parental incapacity. However, the legislature has provided that a parent who is incapable of performing her duties is just as unfit as a parent who refuses to do so. *In re Adoption of S.P.*, 47 A.3d 817, 616 Pa. 309 (Pa. 2012). In this case, where Natural Parents have both refused to perform certain parental duties and demonstrated their incapacity to perform other parental duties, the Court's decision to terminate Natural Parents' parental rights to both Minor Children was justified by the facts clearly and convincingly presented at the termination hearing.

2) **The Court Correctly Determined That The Best Interests of the Minor Child Would Be Served By Terminating Parental Rights.**

After the court determines that a parent's conduct warrants termination, an independent needs and welfare analysis must then be conducted, pursuant to 23 Pa.C.S.A. §2511(b), to determine whether termination of parental rights would be in the best interest of the Minor Children. *In re. L.M.*, 923 A.2d 505, (Pa.Super. 2007).

Here, the Court examined the existence and quality of the bond between Natural Mother and the Minor Children, and a bonding assessment was completed by Dr. Kasey Shienvold on March 9, 2015. **Transcript of Proceedings, Involuntary Termination of Parental Rights**, April 29, 2015, at 25. Due to the ages of the minor children, this bonding assessment consisted of interviews with both Natural Parents and with the foster family, as well as observation of the minor children with both Natural Parents and the foster family, but did not include interviews with the Minor Children. **Id.**, at 28, 37.

Observing that the Minor Children were "comfortable" but not "overly demonstrative" when with the Natural Parents and that the children separated from the Natural Parents easily at the conclusion of the observation, Dr. Shienvold concluded that, "the termination of the relationship between the...biological parents and [the children] is unlikely to have significant long-term effects on the children's emotional and behavioral functioning." **Id.**, at 47-48.

Having acknowledged the existence of a bond, the Court must then turn to assess the quality of that bond in determining whether termination would serve the best interests of the Minor Children. The Court found that the bond between the Natural Parents and the Minor Children was not a strong, healthy or beneficial one.

8

Because of the ages of the Minor Children, because the Natural Parents exhibited many of the risk factors associated with the inability to forge or maintain healthy attachments which would indicate a beneficial bond between they and the Minor Children, and also because of the limited insight and accountability present in the Natural Parents, Dr. Shienvold opined that the parents are not "...in a position to offer the secure and safe emotional and physical environment the children need." **Id.**, at 49-51.

Young children such as these (younger than about 4 or 5) who have a beneficial bond with a parent are expected to exhibit distress upon separation from that parent (as well as the ability to be soothed thereafter), and because these Minor Children did not exhibit these behaviors, Dr. Shienvold concluded that any attachment between Minor Children and Natural Parents was neither strong nor healthy. **Id.**, at 51-52.

This Court agrees with the analysis of Dr. Shienvold and therefore believes that termination of the Natural Parents' parental rights serves the best interests of these Minor Children.

### Conclusion

For the foregoing reasons, the Appeals of the Natural Parents are without merit and should be dismissed.

**BY THE COURT:**

_____
Anthony J. Rosini, Judge

CC: Richard Feudale, Esq., for Appellants
James Best, Esq., for Appellee
Rachel Wiest-Benner, Esq., Guardian Ad Litem
Northumberland County Children and Youth Services
Jennifer Traxler, Esq., Deputy Prothonotary, Pennsylvania Judicial Center, 601
    Commonwealth Avenue, Suite 1600, PO Box 62435, Harrisburg, PA
    17106—Superior Court courtesy copy
Judges (2)
Law Clerks (2)
Northumberland County Legal Journal
Court

9